# United States District Court
# District of Massachusetts

BEAR REPUBLIC BREWING CO.,
      Plaintiff,

    v.                    CIVIL ACTION NO. 10-10118-RBC[1]

CENTRAL CITY BREWING CO.,
      Defendant.

## MEMORANDUM
## AND ORDER ON MOTION
## FOR PRELIMINARY INJUNCTION (#18)

COLLINGS, U.S.M.J.

### I. Introduction

On January 26, 2010, plaintiff Bear Republic Brewing Co. ("Bear Republic") filed a five-count complaint (#1) against defendant Central City Brewing Co. ("Central City").  In Count I Bear Republic alleges a trademark and trade dress infringement claim in violation of §32(1) of the Lanham Act, 15

---

[1]

    The parties have consented to jurisdiction by the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c).

U.S.C. § 1114; in Count II, a trademark and trade dress infringement and false designation of origin claim in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); in Count III, a common law claim for unfair competition; in Count VI, a state law trademark and trade dress infringement in violation of Massachusetts common law and Mass. Gen. L. c. 110H, § 13; and in Count V, a claim for unfair and deceptive acts and practices in violation of Mass. Gen. L. c. 93A. Central City filed an answer to the complaint on March 19, 2010. (#13)

On April 7, 2010, Bear Republic filed a motion for preliminary injunction (#18) together with a memorandum of law (#19) and five declarations, some with attached exhibits. (##20-24)  That same day the plaintiff filed an amended memorandum of law in support of its motion. (#25)  Center City duly filed an opposition (#29) to the preliminary injunction motion on April 21, 2010, along with nine declarations, several with exhibits attached. (##30-38) Bear Republic filed three supplemental declarations (##40-42[2]) on April 28th, and, with leave having been granted, a reply brief on April 29, 2010. (#44) Oral argument on the motion for preliminary injunction was heard on May 6, 2010.  At this juncture, the record on the preliminary injunction motion is

---

[2] A supplemental declaration of Adam Burnham (#46) correcting an earlier filed supplemental declaration (#41) was filed on April 30, 2010.

complete and the matter stands ready for decision.

## II.  The Background Facts

In large measure the historical facts appear to be undisputed.  In 1995 Richard R. Norgrove, his son, Richard G. Norgrove, and their spouses founded Bear Republic in Healdsburg, California[3].  (#22 ¶ 2; #24 ¶ 4)  The company encompasses a microbrewery and brewpub. (#22 ¶2; #24 ¶4)  Since opening its doors to the public, Bear Republic has continuously manufactured and distributed its beers. (#22 ¶ 3; #24 ¶ 4)  Two of Bear Republic's most popular products are its RACER 5 India Pale Ale ("IPA") and a red ale called RED ROCKET. (#22 ¶ 3; #24 ¶¶ 5, 7)  Bear Republic currently sells RACER 5 and RED ROCKET in bottles, drafts, and kegs to bars and restaurants, and has considered selling these products in cans[4]. (#22 ¶¶ 3, 5; #24 ¶ 7)

Since 1998 Bear Republic has "distributed approximately 15 million bottles of...beer, including about 12.8 million bottles of RACER 5 and about 2.25 million bottles of RED ROCKET." (#22 ¶ 3; #24 ¶ 8)  Bear Republic's beers

---

[3]

In the complaint it is alleged that Bear Republic is a California corporation with a principal place of business in Cloverdale, California. (#1 ¶ 2)

[4]

In his Supplemental Declaration, Richard R. Norgrove states that "[w]hile we do not sell our RACER 5 or RED ROCKET beer in cans yet, we have contemplated doing this.  Numerous large breweries sell their products in both cans and bottles, and an increasing number of craft breweries have been selling their beer in cans too in the last several years." (#42 ¶ 3)

have received numerous awards at beer festivals and competitions around the country. (#22 ¶ 5; #24 ¶¶ 10-13)   In addition, the plaintiff's "beers have received industry-wide and public praise and acclaim in the media." (#24 ¶¶ 14-16 and Exh. J, K)   According to the Brewers Association, a national association of breweries, Bear Republic was in the top five percent of all craft breweries nationwide in 2008 based on beer sales volume. (#22 ¶ 4)   The plaintiff distributes its products in twenty-five states, including Massachusetts, and in Japan, Canada, and the U.K. (#22 ¶ 5; #24 ¶ 9)   Richard G. Norgrove attests that:

> As a result of our use of the RACER 5 and RED ROCKET marks, and the widespread sales, publicity, awards, and marketing activities we have undertaken, we have developed substantial goodwill in the RACER 5 and RED ROCKET marks, and they have become perhaps our most valuable assets.
> The RACER 5 beer in particular is often referred to as just "RACER" by those in the industry and consumers, without using "5".  Beer consumers are more familiar with RACER 5 and RED ROCKET brands than the name of our brewery "Bear Republic."
> We own the RACER 5 and RED ROCKET marks, and people in the industry, as well as consumers, have come to recognize these brands as the source of high-quality beer.  We have developed and earned substantial goodwill in our beer and our beers have an excellent reputation.

Declaration of Richard G. Norgrove #24 ¶¶ 26-28.

The RACER 5 product is sold under the RACER 5 mark. (#22 ¶ 7)  Bear Republic owns the trademark RACER 5 INDIA PALE ALE and design under registration number 2,920,887 in the United States Patent and Trademark Office ("USPTO"). (#22 ¶ 7 and Exh. A)  The plaintiff registered this trademark on January 25, 2005 with a first use and in commerce date of November 30, 1998. (#22 ¶ 7 and Exh. A)  The labels and product packaging for RACER 5 use red and yellow as the primary colors, with the term RACER, 5, and India Pale Ale in a red, stylized font. (#22 ¶ 7 and Exh. A; Plaintiff's Exh. 1)[5]  Bear Republic packages RACER 5 in bottles, with its company name printed at the top of the bottle in yellow letters with red outlining.   (Plaintiff's Exh. 1)  Beneath the company name is the byline "Independent Since * 1995," with an image of a bear inside a circle interrupting the words "Independent" and "Since." (Plaintiff's Exh. 1)   Below this byline is the name RACER, which is curved to align with the circle underneath it, inside of which is a red "5" against yellow background. (#24 ¶ 29; Plaintiff's Exh. 1)   At the bottom of the circle and the bottom of the label are the words "India Pale Ale" in red. (Plaintiff's Exh. 1)  The name RACER, the circle with "5" inside of it, and the words "India

---

[5]

   Black and white photographs of Bear Republic's RACER 5 and RED ROCKET ALE bottles are appended to this opinion as Appendix A.

Pale Ale" are all set against a faded gray and white checkered background. (#24 ¶ 29; Plaintiff's Exh. 1)  Both the six-pack containers and the boxed cases use the same font and positioning as the bottle, but only the six-packs use the red and yellow coloring; the boxed cases are in black and white. (#1 ¶ 8; #13 ¶ 8[6]; #24 ¶ 30)

The RED ROCKET product is sold under the RED ROCKET mark.  (#22 ¶ 8)  Bear Republic owns a U.S. Trademark Registration for the trademark BEAR REPUBLIC RICARDO'S RED ROCKET ALE and design. (#22 ¶ 8 and Exh. B)  Registered in the USPTO under number 2,923,042, this trademark was registered on February 1, 2005 with a first use date of March 20, 1996.[7] (#22 and Exh. B)  Again, the labels and product packaging use red and yellow as the primary colors. (Plaintiff's Exh. 2)  The term RED ROCKET is printed in a stylized font that is slanted so that the words read upward from left to right, and the "C" in ROCKET is written backwards. (#24 ¶ 31; Plaintiff's Exh. 2)  Between the words "RED" and "ROCKET" is a rocket ship. (#24 ¶ 31; Plaintiff's

---

[6]

While the defendant admits that the images depicted in paragraph 8 of the complaint appear to be labels for RACER 5 beer, Central City otherwise claims to lack the knowledge to admit or deny the plaintiff's allegation. (#13 ¶ 8)

[7]

In his declaration, Richard G. Norgrove, the son, asserts he first began using the RED ROCKET mark in 1993 when he distributed the beer at bicycling events and trade shows. (#24 ¶ 18 and Exh. L, M)

Exh. 2)  The six-pack containers use the same labels and colors as the bottle labels. (#1 ¶ 13; #13 ¶ 13[8])  The boxed cases of RED ROCKET are slightly different; they use the same stylized font and positioning as the bottle, but contain a zigzag stylized underline appearing under the name, and they are in black and white. (#1 ¶ 13; #13 ¶ 13; #24 ¶ 32)

In 2003 Darryll Frost, Gary Lohin and Jeff Murphy opened a brewpub and craft brewery called Central City, located just outside Vancouver in Surrey, British Colombia, Canada. (#37 at 2)  In addition to the brewpub and brewery, Central City also has a companion liquor store that opened in January 2004. (#37 ¶ 2)  When brewery operations started in 2003, the defendant began producing beer under various names including RED RACER. (#29 at 2)[9]

Darryll Frost, general partner and president of Central City, claims that the inspiration to adopt the name and logo for RED RACER came after he saw a painting at a restaurant, Moderne Burger,  he frequented in Vancouver. (#37 ¶ 5)  The painting portrayed a "young woman on a racer style bicycle, wearing

---

[8]

While the defendant admits that the images depicted in paragraph 13 of the complaint appear to be labels for RED ROCKET ale, Central City otherwise claims to lack the knowledge to admit or deny the plaintiff's allegation. (#13 ¶ 13)

[9]

Black and white photographs of Central City's RED RACER cans are appended hereto as Appendix B.

a short skirt and high heels with her feet extended in front of her.  The 'pin-up' style of the picture, featuring a young woman riding a bike with her skirt and hair blowing in the wind, looked like it would lend itself well to becoming a beer logo." (#37 ¶ 5)  Frost adapted the image for use as a logo, changing the color of the bike from blue to red, the size and shape of the bike, as well as several other details. (#37 ¶ 6)  Frost, Gary Lohin and Jeff Murphy "hit upon the RED RACER name in a brain-storming session shortly after the RED RACER image was developed." (#37 ¶ 7)

In 2005, Central City began selling a selection of its beers in cans in its own liquor store. (#37 ¶ 8)  Two years later, the defendant started selling cans of RED RACER Pale Ale, a beer which had previously only been available in the brewpub, in the RED RACER cans. (#37 ¶ 8)  Due to the popularity of the pale ale, "in 2008 Central City decided to brand all of its retail beers under the RED RACER mark." (#37 ¶ 8)

At the September 2009 Great American Beer Festival in Denver, Colorado, two people asked Richard G. Norgrove how Bear Republic's RED RACER beer in cans was doing. (#24 ¶ 34)  One of these individuals was an employee of a Massachusetts beer distributor that distributes Bear Republic's beer, and the other was a fellow brewer. (#24 ¶ 34)  Richard G. Norgrove thought these

8

individuals were mistaken until December 2009 when a fellow brewer contacted Bear Republic to inform them that Central City was selling RED RACER beer in the United States.[10] (#24 ¶ 34)

On December 15, 2009, Bear Republic requested by letter that Central City cease using the RED RACER mark, and, by letter dated January 8, 2010, Central City responded by refusing to cease and desist using RED RACER. (#1 ¶¶ 43, 44; #13 ¶¶ 43, 44)  Shortly thereafter, Bear Republic filed the instant lawsuit.  When settlement negotiations faltered, on April 4, 2009, Bear Republic sought preliminary injunctive relief.

### III. The Applicable Law and Legal Standard

The First Circuit has explained that:

> Over time, we have crafted a four-part framework for use in determining whether the grant or denial of preliminary injunctive relief is appropriate. Under this formulation, trial courts must consider (1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest. *See*

---

[10]

Central City admits that it has sent two shipments of beer into Massachusetts, the first one being in or about September, 2009. (#13 ¶¶ 27-29)  The shipments combined "totaled of 1,900 cases with each case containing 24 cans." (#23 ¶ 28)

> *Weaver v. Henderson,* 984 F.2d 11, 12 & n. 3 (1st Cir.
> 1993); *Narragansett Indian Tribe v. Guilbert,* 934 F.2d
> 4,   5   (1[st]   Cir.1991).

*Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 15 (1 Cir., 1996);

*see also ANSYS, Inc. v. Computational Dynamics North America, Ltd.*, 595 F.3d

75, 78 (1 Cir., 2010); *Francisco Sanchez v. Esso Standard Oil Co.*, 572 F.3d 1, 14

(1 Cir., 2009); *Coquico, Inc. v. Rodriguez-Miranda,* 562 F.3d 62, 66 (1 Cir.,

2009).  In this instance it is the plaintiff, as the party requesting preliminary

injunctive relief, who "bears the burden of establishing that these four factors

weigh in its favor." *Esso Standard Oil Co. (Puerto Rico) v. Monroig-Zayas*, 445

F.3d 13, 18 (1 Cir., 2006)(*citing Nieves-Marquez v. Puerto Rico*, 353 F.3d 108,

120 (1 Cir., 2003)).  Indeed, the Supreme Court has quoted with approval the

observation "'that a preliminary injunction is an extraordinary and drastic

remedy, one that should not be granted unless the movant, *by a clear showing,*

carries the burden of persuasion.' 11A C. Wright, A. Miller, & M. Kane, Federal

Practice and Procedure §2948, pp. 129-130 (2d ed.1995) (emphasis added;

footnotes omitted)." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

The First Circuit has found the initial element of the test, i.e., likelihood

of success on the merits, to be of critical importance. *See Esso Standard*, 445

F.3d at 18 ("'The sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity.'" (quoting *New Comm Wireless Servs., Inc. v. SprintCom, Inc.,* 287 F.3d 1, 9 (1 Cir. 2002)."); *ANSYS, Inc.*, 595 F.3d at 78 ("The first factor, likelihood of success, is usually given particularly heavy weight.") (citation omitted); *Coquico, Inc.*, 562 F.3d at 66 ("The first of these four factors normally weighs heaviest in the decisional scales.")(citation omitted); *Ross-Simons of Warwick*, 102 F.3d at 16 ("Likelihood of success is the main bearing wall of the four-factor framework.") (citations omitted).  However, the First Circuit has also recognized that

> the granting of an injunction is an exercise of equity, and the presence of a weak link in the movant's chain would forestall our reversing the district court's denial under the abuse of discretion standard. Therefore, we concentrate on the district court's finding that a damages remedy would prove adequate to compensate Matrix for any injury. *See Rosario-Urdaz [v. Rivera-Hernandez],* 350 F.3d [219] at 222 [(1 Cir., 2003)] ('Where a plaintiff stands to suffer a substantial injury that cannot be adequately compensated by an end-of-case award of money damages, irreparable injury exists.).

*Matrix Group Ltd., Inc. v. Rawlings Sporting Goods Co., Inc.*, 378 F.3d 29, 34 (1 Cir., 2004); *Sampson v. Murray,* 415 U.S. 61, 88 (1974)("We believe that the Court of Appeals was quite wrong in suggesting that at this [preliminary

injunction] stage of the proceeding the District Court need not have concluded that there was actually irreparable injury.  This Court has stated that '(t)he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies,' (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-507, 79 S.Ct. 948, 954, 3 L.Ed.2d 988 (1959).") (footnote omitted); *Charlesbank Equity Fund II v. Blinds To Go, Inc.,* 370 F.3d 151, 163 (1 Cir., 2004) ("[W]e hold that the district court acted well within the encincture of its discretion in denying a preliminary injunction on the ground that [movant] had failed to make the requisite showing of irreparable harm.") (footnote and citation omitted).

The bottom line is that it is incumbent on the district court to "consider all four factors." *Air Line Pilots Association, International v. Guilford Transportation Industries, Inc.*, 399 F.3d 89, 95 (1 Cir., 2005).

## IV. Discussion

### A. Likelihood of Success

"The purpose of trademark laws is to prevent the use of the same or similar marks in a way that confuses the public about the actual source of the goods or service." *Star Financial Services, Inc. v. Aastar Mortgage Corp.*, 89 F.3d 5, 9 (1 Cir., 1996) (citing *DeCosta v. Viacom Int'l, Inc.*, 981 F.2d 602, 605 (1 Cir., 1992), *cert denied*, 509 U.S. 923 (1993)); *Venture Tape Corp. v. McGills Glass Warehouse*, 540 F.3d 56, 60 (1 Cir., 2008), *cert. denied*, 129 S. Ct. 1622 (2009). To succeed in a trademark infringement action, a plaintiff must show "'1) that he uses, and thereby "owns," a mark, 2) that the defendant is using that same

or a similar mark, and 3) that the defendant's use is likely to confuse the public, thereby harming the plaintiff.'" *Star Financial Services, Inc.,* 89 F.3d at 9 (citing *DeCosta*, 981 F.2d at 605); *Boston Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 12 (1 Cir., 2008).

Bear Republic has sufficiently established that it owns federal trademark registrations for its RACER 5 and RED ROCKET marks and that Central City is using a similar mark. The primary issue thus becomes whether the contemporaneous marketing of the parties' respective goods is likely to cause confusion among consumers. *Venture Tape Corp.*, 540 F.3d at 60. "[A] plaintiff alleging trademark infringement must establish more than a possibility of confusion; rather, the plaintiff must demonstrate a substantial likelihood of confusion." *Riverbank, Inc. v. River Bank*, 625 F. Supp.2d 65, 69-70 (D. Mass., 2009)(citing *International Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Winship Green Nursing Center*, 103 F.3d 196, 200-01 (1 Cir., 1996)(further citations omitted)).

The First Circuit has identified eight factors to weigh in assessing likelihood of confusion:

> the similarity of the marks; the similarity of the goods;
> the relationship between the parties' channels of trade;

13

> the relationship between the parties' advertising; the classes of prospective purchasers; evidence of actual confusion[11]; the defendants' intent in adopting its mark; and the strength of the plaintiff's mark.

*Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 487 (1 Cir., 1981)(citations omitted); *The Shell Co. (Puerto Rico) Ltd. v. Los Frailes Service Station*, - F.3d -, 2010 WL 1797198, *7 (1 Cir., 2010)("This circuit generally looks to a non-exclusive, multi-factor list to determine whether a likelihood of confusion exists.") (footnote omitted); *Visible Systems Corp. v. Unisys Corp.*, 551 F.3d 65, 73 (1 Cir., 2008).

The First Circuit has described this list of factors as "illustrative," explaining that "the purpose of the inquiry is simply to determine whether 'the allegedly infringing conduct carries with it a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care.'" *The Shell Co. (Puerto Rico)*, 2010 WL 1797198, at *7 (quoting *International Ass'n of Machinists and Aerospace Workers, AFL-CIO*, 103 F.3d at 201); *Boston Duck Tours*, 531 F.3d at 12; *Riverbank*, 625 F. Supp.2d at 70-1 ("While the Court's analysis is guided by these factors, the Court is cognizant that the list is not exhaustive and no single factor is determinative.") (citations omitted).  As is evident, "likelihood of confusion is a factbound inquiry." *Borinquen Biscuit Corp.*

---

[11]

    Although evidence of actual confusion should be considered, actual confusion *per se* is not required to make out a case of trademark infringement. *See,* e.g., *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 120 (1 Cir., 2006); *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 496 (1 Cir., 1981).

*v. M.V. Trading Corp.*, 443 F.3d 112, 120 (1 Cir., 2006).

## 1.  Similarity of the Marks

With respect to the similarity between the marks of Bear Republic and Central City, Bear Republic advances three arguments.  First, the plaintiff contends that Central City's RED RACER mark "sounds and looks similar to Bear Republic's RACER 5 mark." (#25 at 9)  Second, Bear Republic asserts that "Central City's RED RACER mark is also confusingly similar to Bear Republic's RED ROCKET mark." (#25 at 12)  Third, the RED RACER mark is said to be confusing "because it is effectively a combination of Bear Republic's RED ROCKET and RACER 5 marks."[12]  (#25 at 12)

---

[12]

Bear Republic has disavowed any reliance on the so-called conjoint use rule. (#44 at 1)  The entirety of the plaintiff's third argument is that "[s]ection 43(a) of the Lanham Act....expressly states that 'any combination' of words, terms, or names is actionable if it is likely to cause confusion...[so], [a]s a legal matter then, this Court may consider whether RED RACER infringes the combination of RED ROCKET and RACER 5." (#44 at 1)

Section 43(a) was revised by the Trademark Law Revision Act of 1988 to include the "any combination" language upon which the plaintiff relies.  Prior to this revision, "Section 43(a)...[a]ppeared to deal only with false descriptions or representations and false designations of geographic origin." S. Rep. No. 515, 100th Cong., 2nd Sess. 1988, 1988 U.S.C.C.A.N. 5577, 5603, 1988 WL 170248.  Yet, "[s]ince its enactment in 1946," the courts have widely interpreted Section 43(a) "as creating, in essence, a federal law of unfair competition." S. Rep. No. 515, 100th Cong., 2nd Sess. 1988, 1988 U.S.C.C.A.N. 5577, 5603, 1988 WL 170248. The legislative history of the Lanham Act indicates that Section 43(a) was revised in 1988 "to codify the interpretation it has been given by the courts." S. Rep. No. 515, 100th Cong., 2nd Sess. 1988, 1988 U.S.C.C.A.N. 5577, 5603, 1988 WL 170248; *see also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 783 (1992)("[I]n the Trademark Law Revision Act of 1988, 102 Stat. 3935, Congress codified the judicial interpretation of § 43(a), giving its *imprimatur* to a growing body of case law from the Circuits that had expanded the section beyond its original language.").

While the legislative history explains why Congress added the "any combination" language, it does nothing to elucidate whether "any combination" is limited to marks on one product or encompasses marks on more than one product.  Bear Republic has cited no case law to support its statutory interpretation, and admittedly has not developed its argument on this point. (#44 at 1 n.1 ("Bear Republic only argued that RED RACER infringed this combination of its marks in two sentences in its brief.")).  Consequently, in ruling on

Bear Republic and Central City are direct competitors because they offer virtually identical products for sale in this commonwealth: craft-brewed American India Pale Ale and American red ale. When the parties are direct competitors, as they are here, the similarity of marks inquiry is the most important factor in the likelihood of confusion analysis. *Boston Duck Tours*, 531 F.3d at 26 (citation omitted). "The degree of similarity between two marks ... is determined by analyzing their sight, sound, and meaning." *Boston Duck Tours*, 531 F.3d at 24 (citing *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 817 (1 Cir., 1987)). "'Similarity is determined on the basis of the total effect of the designation, rather than a comparison of individual features.'" *Pignons*, 657 F.2d at 487 (quotation and further citation omitted).

RACER 5

The plaintiff contends that the sound, look, and meaning of the RED RACER mark and the RACER 5 mark are confusingly similar. In terms of sound and appearance, Bear Republic asserts that RED RACER and RACER 5 are confusingly similar because "[t]hey share the exact same term 'RACER' and the same number of syllables, three." (#25 at 9) The "prominence of the word

---

the preliminary injunction motion, the Court shall not consider whether the RED RACER mark is confusing because it is a combination of the RED ROCKET and RACER 5 marks.

RACER," the plaintiff argues, "is likely to cause confusion because consumers, whose recollections are not perfect, are likely to remember 'RACER' in RACER 5 and believe that RED RACER refers to RACER 5 or a related Bear Republic brand." (#25 at 10)  Further, the plaintiff posits that "the parties' marks share the same connotation of motion and speed." (#25 at 10)

On the issue of trade dress, Bear Republic asserts that Central City's RED RACER label "mimics" the design features of its RACER 5 label in a litany of ways.  First, the term RED RACER "appears in a cartoon-like, stylized font that is almost indistinguishable from the one used for Bear Republic's RACER 5 mark...". (#25 at 14)  Second, the top of the RED RACER can has colored stripes that recall the top of the RACER 5 label.  Third,  the colors used for the words "RED RACER" are comparable to the colors used in the name "Bear Republic" on the RACER 5 label, and the term "Red" slants upward just like the term "Bear."  Fourth, the positioning of the front wheel of the bicycle on the RED RACER can is reminiscent of the circle appearing under RACER on the RACER 5 label.  Lastly, the overall look of both designs is said to have a similar style in the nature of a 1950s or 1960s comic.

Bear Republic submits that "[e]ven if one were to consider the Bicycle Design as distinguishing Central City's label from Bear Republic's, confusion is

17

still likely because the dominant feature of the label is the term RED RACER."

(#25 at 15)  As explained in a leading treatise:

> Conflicting marks consisting of both words and pictorial symbols must be compared in their *entireties* to determine likelihood of confusion....
>
> It has sometimes been stated that in a word-design composite mark, the words are always presumed to be the 'dominant' portion. This might be labeled the 'literacy' presumption, in that it assumes that words have more impact than designs, a dubious generalization.  That this 'rule' of word-dominance is merely a guideline is shown by cases finding that a design element is dominant if more conspicuous than accompanying words.
>
> The Federal Circuit has cautioned that: 'There is no general rule as to whether letters or design will dominate in composite marks. ... No element of a mark is ignored simply because it is less dominant, or would not have trademark significance if used alone.'

4 *McCarthy on Trademarks and Unfair Competition* § 23:47 (4th ed. 2010)(footnotes omitted)(hereinafter "*McCarthy*").

Moreover, "[i]f the 'dominant' portion of both marks is the same, then confusion may be likely, notwithstanding peripheral differences." 4 *McCarthy* § 23.44.

Bear Republic further contends a consumer could "hear of the RACER 5 and/or RED ROCKET beer via word-of-mouth, read about it in an article, or drink a glass at a bar or restaurant, without ever seeing the RACER 5 or RED

ROCKET label, and only vaguely remember the name later." (#25 at 16) Indeed, "in the case of alcoholic beverages, the degree of similarity need not be as high as usual since the likelihood of confusion is greater because drinks are frequently purchased at bars and clubs without the purchaser seeing any bottles or labels." *A. Smith Bowman Distillery, Inc. v. Schenley Distillers, Inc.,* 198 F. Supp. 822, 827-28 (D. Del., 1961)(footnote omitted).[13]

Central City counters that the parties' unique designs, different trade dress, and prominent use of house marks clearly distinguish the marks to make confusion unlikely.  The most obvious difference between the parties' trade dress is that RED RACER is sold in cans while Bear Republic's beers are available in bottles.[14]  Further, according to the defendant, when considered in their entirety, RACER 5 and RED RACER evoke completely different commercial impressions.  While RACER 5's label design harkens back to the 1960s SPEED RACER cartoon, the RED RACER mark conveys a totally different impression of

---

[13]

Of course in this case RED RACER has only been sold in cans in liquor stores in Massachusetts. There is no evidence in the record that Central City has shipped, or intends to ship, RED RACER beer to Massachusetts for sale in bars or restaurants.

[14]

While the prospect of selling its beer in cans has been discussed at Bear Republic, no evidence has been proffered to suggest that the plaintiff, in fact, has a present intent to do so.  Moreover, in his declaration, Darryll Frost states that the bottle versus can "distinction is important, because the vast majority of retail market craft-brewed beer is sold in bottles so the RED RACER cans stand out." (#37 ¶ 10)

a 1940s "pin-up" girl.  Moreover, Central City submits that Bear Republic's prominent use of its house mark on the RACER 5 label further distinguishes the parties' beers.  Although the defendant does not use its house mark on the front of its label, the Canadian red maple leaf is on the front of the can situated between the words "craft" and "brewed" thereby reflecting that it is an imported beer.

Based on the total effect of the marks, the Court concludes that any similarity is not likely to cause confusion.  Although the products both share the term "RACER" and use a somewhat comparable font and color scheme, the designs and trade dress of the two marks look so different as to distinguish sufficiently the products.

The cases upon which the plaintiff relies to support its contention that use of the term "red" in RED RACER does nothing to distinguish the mark from RACER 5 are not persuasive.  In finding that the mark "BLUE CHIPS" infringed the mark "CHIPS" for children's clothing, the court in *Chips 'N Twigs* held that the addition of the word "Blue" did not distinguish the defendant's goods because the brand word "Chips" had acquired such a distinctive secondary meaning in the field that retailers and buyers would associate a product labeled

"BLUE CHIPS" with the product of the plaintiff. *Chips 'N Twigs, Inc. v. Blue Jeans Corp.*, 146 F. Supp. 246, 247 (E.D. Pa., 1956).  Similarly, in *Calamari Fisheries*, the court held that "The Village Catch" infringed "The Daily Catch" not only because of the shared term "Catch" but also because the defendant's subjective intent was clearly to trade on the plaintiff's reputation, the plaintiff's mark had acquired secondary meaning, and the evidence plainly supported the conclusion that numerous instances of actual consumer confusion had occurred. *Calamari Fisheries, Inc. v. The Village Catch*, 698 F. Supp. 994, 997, 1003-5 (D. Mass., 1988).  In the *Anheuser-Busch* case, the court found that "Billy Budd" infringed the "Bud" mark because both the sound and appearance of the marks, including the label designs, were similar, and the defendant "had used 'Budd' without the 'Billy' to refer to its beer" as part of its promotions.  *Anheuser-Busch, Inc. v. Caught-on-Bleu, Inc.*, 288 F. Supp.2d 105, 115-17 (D.N.H., 2003), *aff'd.,* 105 Fed. Appx. 285 (1 Cir., 2004), *cert. denied,* 544 U.S. 920 (2005).

In the present matter, Bear Republic has not shown that its product has attained such distinction in the field that the term "RACER" has a secondary meaning or that Central City has marketed "RED RACER" as simply "RACER."

In *A. Smith Bowman Distillery*, the defendant's "Indiana Gentleman" mark

for bourbon was found to infringe the plaintiff's "Virginia Gentleman" mark for bourbon.  The court concluded that the marks were confusingly similar because in addition to the "mere repetition of the common word 'Gentleman,' the marks in question also have a distinct similarity in that the varying word in each mark is a geographic modification of the common word." *A. Smith Bowman Distillery, Inc.*, 198 F. Supp. at 827.  The varying word in the marks at issue here, 5/five and red, share no such similarity.  Moreover, the ordering of the terms is different as the term "red" precedes "RACER" while the term "5" follows it.[15]

The case in which the Fifth Circuit held "BLUE SHIELD" and "RED SHIELD" were confusingly similar because of the shared dominant word "shield" is distinguishable. *National Ass'n of Blue Shield Plans v. United Bankers Life Insurance Co.*, 362 F.2d 374 (5 Cir., 1966).  The court based its finding of

---

[15]

In case of *D.J. Bielzoff Products Co. v. White Horse Distillers*, 107 F.2d 583 (C.C.P.A., 1939), the court found that "Red Horse" as a mark for various liquors so nearly resembled the trademarks "Black Horse" and "White Horse" for scotch whiskies as to cause confusion and destroy the value of the defendant's registered marks.  The case at bar, of course, does not involve the mere change of a color preceding the term RACER; the plaintiff's mark has no color term at all.  So, too, in *H. Sichel Sohne, GmbH v. John Gross & Co.*, 204 U.S.P.Q. 257, 261 (T.T.A. B., Aug. 30, 1979), it was determined that, with regard to the marks "BLUE NUN" and "BLUE CHAPEL" that "the similarity in the commercial impressions engendered by such marks as a whole in that they both contain the prefix "BLUE" and suffixes conveying such close relationship in their religious connotation as "NUN" and "CHAPEL", would cause prospective purchasers, familiar with petitioner's wine and trademark "BLUE NUN", to reasonably assume upon encountering respondent's "BLUE CHAPEL" wine, that such product had its origin in or was in some way connected with petitioner."  As has been discussed, the same cannot be said for the marks, in their entireties, in this case.

infringement on a variety of other factors, including the important fact that it was "inconceivable" the defendants were not aware of or familiar with the plaintiff's product. *National Ass'n of Blue Shield Plans*, 362 F.2d at 377. Moreover, in addition to the comparable product names, the defendant used a shield image that was very similar to that of the plaintiff. *National Ass'n of Blue Shield Plans*, 362 F.2d at 377.  Like the *Calamari Fisheries* court's finding on intent, the Fifth Circuit held that

> it seems clear from the similarity of the marks and the conduct outlined above that the purpose of United Bankers was to use marks as close as possible to those of the National Association, so as to appropriate the good will and good name of the blue shield, while maintaining just sufficient a distinction between the marks to confuse, if possible, both the public and the courts.

*National Ass'n of Blue Shield Plans*, 362 F.2d at 377.

Here, the evidence of the defendant's intent in adopting its mark is disputed, and the RED RACER image is quite different from that of the plaintiff.

Although the two marks share the word "RACER," the label designs are so different that they do not suggest a common origin or family of marks.  With its checkered flag background, Bear Republic's RACER 5 mark brings to mind the SPEED RACER cartoon series and conveys an overall racing theme.  In

23

contrast, Central City's RED RACER features a voluptuous "pin-up" girl riding a red bicycle that evokes a retro feel.   Further reducing the possibility of confusion is Bear Republic's prominent use of its house mark on its products, the Canadian red maple leaf on Central City's products and the fact that Bear Republic packages its beers in bottles and Central City in cans.

Bear Republic's contention that the likelihood of confusion analysis should be focused on the dominant word portion of the marks is misguided.  Words are considered a dominant portion of the mark when "the impact of the design in the overall commercial impression is minor when compared with the words...". *Herbko Intern., Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1165 (Fed. Cir., 2002). Unlike the crossword puzzle design in *Herbko*[16], the RED RACER design does "convey [a] distinct or separate impression apart from the word portion of the mark." *Herbko,* 308 F.3d at 1165.  In fact, the "pin-up girl" design is the prominent feature of the mark and consumers could easily attach greater significance to that depiction than to the words.  In any event, the marks have been compared on the basis of their total effect in concluding that Bear Republic

---

[16]

In contrast to the case at bar, "the word portion of Herbko's mark is identical to Kappa's in appearance and sound." *Herbko*, 308 F.3d at 1165.

has failed to show a likelihood of confusion based on the similarity of the marks. *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 817 (1 Cir., 1987).

Bear Republic and Central City both sell their beers in liquor stores in Massachusetts, and while Bear Republic's beers are available to bars and restaurants in the Commonwealth, there is no evidence to show that Central City has, or intends to, enter that market here.   Thus, in the current typical marketplace setting, a liquor store, a consumer would see the label that indicates source and brand.

It is certainly possible that a consumer may read about, hear of, or taste a RACER 5 beer without seeing the label or knowing the full name, and therefore only have a vague recollection of the name later.   It seems equally possible that consumers who read about or try a beer they enjoyed or think they would enjoy would be likely to remember at least one of these distinguishing factors correctly.   While it is true that beer purchasers are not likely to exercise a high degree of care in purchasing a relatively inexpensive item like beer, it seems likely that drinkers of craft-brewed beer may be generally more discerning drinkers than average beer drinkers, and they would be likely to

remember correctly or recognize at least one of the several distinguishing elements between RACER 5 and RED RACER.

RED ROCKET

Bear Republic contends that Central City's RED RACER mark is also confusingly similar to its RED ROCKET mark because the marks "look the same, sound similar, have the same number of syllables, have the same cadence, share a common word (red), and are likely to be confused." (#25 at 12)  In addition to sharing an identical first word, a comparable alliterative effect is created by the second word of both marks, "Rocket" and "Racer," each of which start with the letter "R".  In the plaintiff's view "both marks share a common theme of motion and speed since 'racer' and 'rocket' both recall these themes." (#25 at 12-3)

According to Bear Republic, the presentation of the marks on the labels serves to reinforce the similarity between the marks.  The words "'RED RACER' each slant upward to the right on the can, just like the words in RED ROCKET ALE used on the boxed case packaging." (#25 at 14-15)  Lastly, the plaintiff repeats its arguments that the words are the dominant feature of the labels and that a side by side comparison is improper because confusion is likely to occur in a variety of ways.

26

As with RACER 5, the Court concludes that the RED ROCKET and RED RACER marks are not so similar that confusion would be likely to occur. Considering the marks in their entireties, the overall impression of each mark is quite different.  The name and design of the RED RACER mark conveys a retro or vintage impression with its "pin-up" girl on a bicycle, while the name and design of the RED ROCKET mark conveys a more comic-book like impression with its backward "C" on ROCKET and a rocket ship meant to "evoke[] the 1950s and 1960s," specifically "[t]he 'space race' between the U.S. and the former Soviet Union." (#44 at 5 n. 10)  The term "red" in the names of beers is often used to refer to the beer type. (#38 ¶ 3 and Exh. 2)  Richard R. Norgrove states in his declaration: "There are many brands using "RED" in the brand name, in part because "red" is descriptive of a type of beer - one that is reddish or amber in color.  It is common in the industry to use "RED" or add "RED" to the name of a beer for this reason." (#22 ¶ 11)  Thus, the fact that both RED RACER and RED ROCKET use that term is not likely to be confusing.[17]

---

[17]

 Since RED ROCKET represents a red ale offering from Bear Republic, a consumer would not necessarily think that RED RACER is another red beer offering in the same family of beers.  Indeed, although Bear Republic has offered a few beers with "Racer" in the name, considering the marks RED ROCKET and RACER 5, the plaintiff does not appear necessarily "to market its products under closely related trade-marks; such as, for example, Seagram's 'Five Crown' and 'Seven Crown,' Hiram Walker's 'King of Clubs,' 'Queen of Clubs,' and 'Jack of Clubs,' and Gooderham & Worts' use of 'Three Star' and 'Five Star.'" *D.J. Bielzoff Products, Co.*, 107 F.2d at 585.

There is no commonality between the fonts or label designs.   Bear Republic prominently displays its house mark on its label, while the Central City can bears the Canadian red maple leaf.   Although the parties' marks both couple the word "RED" with a word conveying movement and speed, this similarity does not overcome the overall differences of the marks names and designs.

2.  *Similarity of Goods*

The goods offered by Bear Republic and Central City are the same.   Both companies produce craft-brewed beer, including American India Pale Ale and red ale varieties.   Central City does not dispute the similarity of the goods.   As such, this factor favors Bear Republic.

3.  *Channels of Trade, Advertising, and Prospective Purchasers*

"[T]he First Circuit has recognized that these factors tend to be interrelated," so they shall be considered in tandem. *See Riverbank*, 625 F. Supp.2d at 72 (citing *Beacon Mut. Ins. Co. v. OneBeacon Ins. Group*, 376 F.3d 8, 15 (1 Cir., 2004)(additional citations omitted)).   Bear Republic asserts that the parties advertise by similar means in that both promote their beers online, at beer festivals, and through online media. (#23 ¶¶ 5, 10-24, 29 and Exh. M, Q;

#24 ¶¶ 10-25)  The plaintiff and defendant both sell beers at liquor stores, but not in bars and restaurants, in Massachusetts. (#20 ¶ 2)  With respect to prospective purchasers, both Bear Republic and Central City offer their products to the general beer drinking public, not necessarily expert or sophisticated consumers.  Central City does not contest any of this evidence of overlap, so these factors favor Bear Republic.

4. *Evidence of Actual Confusion*

Bear Republic contends that actual confusion has already occurred, and that this occurrence is persuasive evidence that Central City's mark is infringing. The plaintiff submits that Adam Burnham ("Burnham"), a sales representative for one of its distributors in Massachusetts, mistakenly thought that RED RACER was one of Bear Republic's beers. (#46 ¶¶ 4-5)  In addition to his own confusion, Burnham recounts "two incidents, in which customers at Julio's Liquors were confused by the RED RACER beer can." (#46 ¶ 7) [18]

Burnham states that when he "initially heard of RED RACER, [he] assumed it was a Bear Republic product based on Bear Republic's use of the

---

[18]

The plaintiff also points to an October 2009 article in a column, The Beer Nut, in which the writer refers to RED RACER as "Red Rocket" in four places. (#23 ¶ 6 and Exh. A)  The defendant contends that these errors are just as likely to be sloppy reporting as actual confusion. (#29 at 18-9)

word RACER in their popular RACER 5 beer.   In addition, many breweries create 'red' versions of their beers and brand them using the term 'red'." (#21 ¶ 8)   At the Great American Beer Festival in 2009, Burnham asked Richard Norgrove, Jr.[19] and Peter Kruger of Bear Republic how they were doing distributing their RED RACER beer in cans. (#21 ¶ 9; #46 ¶ 4)   Messrs. Norgrove and Kruger responded that Bear Republic did not distribute its beer in cans. (#21 ¶ 9; #46 ¶ 4)   Having previously heard of a RED RACER beer, Burnham was confused at this point. (#21 ¶ 9; #46 ¶ 4)   Only after doing some research did he learn that Central City was selling a RED RACER brand beer. (#21 ¶ 10; #46 ¶ 5))

Burnham works for a beer distributor, Atlantic Importing Company, and one of the clients he manages is Julio's Liquors. (#46 ¶ 7) Julio's Liquors sells RACER 5, RED ROCKET, and RED RACER. (#21 ¶ 11)   Burnham states that he once "heard a customer at Julio's Liquors erroneously state that RACER 5 was in a can when she spotted RED RACER."[20] (#21 ¶ 11)   On another occasion, Burnham avers that "after seeing RED RACER, a customer asked [him] if RED

---

[19]

      In his affidavits, Burnham refers to Richard Norgrove, Jr., by whom he presumably means the son. It is not clear that the son is a junior since he and his father do not share the same middle initial.

[20]

      Burnham corrected the customer. (#21 ¶ 11)

RACER was a Bear Republic product." (#21 ¶ 12)

Central City contends that no actual confusion has occurred because "[i]t is not enough to show that some people have mistaken the marks at issue to show actual confusion for purposes of trademark infringement; such confusion must be 'commercially relevant.'" (#29 at 14 (footnote omitted))  "[A]ctual confusion is commercially relevant if the alleged infringer's use of the mark 'could inflict commercial injury in the form of ... a diversion of sales, damage to goodwill, or loss of control over reputation' on the trademark holder." *Beacon Mut. Ins. Co. v. OneBeacon Ins. Group,* 376 F.3d 8, 15 (1 Cir., 2004)(citations omitted).  Moreover, "the likelihood of confusion inquiry is not limited to actual or potential purchasers, but also includes others whose confusion threatens the trademark owner's commercial interest in its mark." *Beacon Mut. Ins. Co.*, 376 F.3d at 16 (footnote and citations omitted).

Central City asserts that such initial confusion is comparable to the "temporary confusion" described in *Riverbank*, 625 F. Supp.2d at 74 (further citation omitted).  Indeed, as in *Riverbank*,

> and crucial to this Court's analysis, the record is devoid of any evidence that the 'temporary confusion ... had any effect whatever on the ultimate decision of a purchaser whether to [purchase services].' [*Astra*

31

*Pharm. Prods. v. Beckman Instruments, Inc.*, 718 F.2d 1201, 1207 (1st Cir. 1983)]; *see also Lang v. Retirement Living Publ'g Co., Inc.*, 949 F.2d 576, 582-83 (2d Cir.1991) (confusion irrelevant where plaintiff supplied no link between confusion and eventual purchase decision); *Alta Vista [Corp., Ltd. v. Digital Equip. Corp.]*, 44 F. Supp.2d [72] at 79 [(D. Mass. 1998)](dismissing relevance of incidents of confusion where confusion did not affect ultimate purchase or sale); *Pump [Inc. v. Collins Mgmt., Inc.]*, 746 F. Supp. [1159] at 1169-70 [(D. Mass. 1990)](none of the evidence presented by plaintiff showed that the allegedly confused consumers mistakenly believed that the defendant's product actually was released by the plaintiff). Here, Riverbank has not produced any evidence that the alleged confusion resulted in a mistaken purchase by any consumers.

*Riverbank*, 625 F. Supp.2d at 74.

Although a trademark holder need not demonstrate actual confusion, such a showing "will strengthen the holder's infringement claim." *Visible Systems Corp.*, 551 F.3d at 72 (citing *Borinquen Biscuit Corp.*, 443 F.3d at 120).

Bear Republic has offered three instances of confusion within a one year period recognizing, of course, that Central City has only recently begun importing its beer to Massachusetts. The plaintiff has not alleged that any of these occurrences resulted in a loss of sales or customers. The confusion by Burnham did not result in a loss of goodwill because Burnham does not assert

that he purchased, consumed, reviewed or recommended one beer thinking it was the other one.  Moreover, the fact that a customer may have asked "if RED RACER was a Bear Republic product" does not show that Bear Republic's goodwill was threatened; the customer simply posed a question.   Finally, Burnham alleges he heard a customer say "that RACER 5 was in a can when she spotted RED RACER." (#21 ¶ 11)  Even assuming *arguendo* that this situation threatened Bear Republic's goodwill, a single instance of actual confusion does not suffice.  For example, in *Hasbro*, the court held "[t]he fact that one, two, or three people over four years may have expressed confusion... does not constitute the level of actual confusion necessary to support a general finding of likelihood of confusion." *Hasbro, Inc. v. Clue Computing, Inc.*, 66 F. Supp.2d 117, 124 (D. Mass., 1999), *aff'd*, 232 F.3d 1 (1 Cir., 2000); *see also Pignons*, 657 F.2d at 490 ("[A] single misdirected communication is very weak evidence of consumer confusion.") (citation omitted); *Riverbank*, 625 F. Supp.2d at 73; *Black Dog Tavern Co., Inc. v. Hall*, 823 F. Supp. 48, 56 (D. Mass., 1993). In sum, on the current record, the evidence proffered by Bear Republic is not persuasively demonstrative of actual confusion.

5.  *Defendant's Subjective Intent*

Bear Republic contends that "there is little doubt that Defendant was aware of Bear Republic's RACER 5 and RED ROCKET marks by virtue of Bear Republic's long-standing use of these marks in the same industry, its extensive recognition and awards, and its registrations which serve as constructive notice of its rights." (#25 at 19)  The plaintiff notes that Central City sells RACER 5 at its own liquor store in Canada, and that the defendant changed the name of its India Pale Ales from EMPIRE and IMPERIAL to RED RACER despite early publicity and success under their old names. (#23 ¶¶ 23-25)

The plaintiff's argument is not as persuasive as it may appear at first blush.  As a threshold matter, it should be remembered that the parties hail from different countries, the plaintiff being located in California while the defendant is located in British Columbia, Canada.  While "Central City admits that it began selling RACER 5 in its liquor store in 2009," (#13 ¶ 42), this admission does not aid the plaintiff's cause since the development of the RED RACER name and logo predates the sale of Bear Republic's beer in the defendant's liquor store by about six years. (#37 ¶ 4 ("[W]e developed the RED RACER name and logo in 2003."))  Similarly, Bear Republic did not seek to register its marks and logos until 2004 (#22 ¶¶ 7-8) after the RED RACER mark and logo had been conceived.  Lastly, while the plaintiff's beers have been

receiving awards since the late 1990s, the majority of those awards were won after 2003. (#24 ¶¶ 11-13)

Central City specifically denies having had knowledge of the plaintiff or its products when developing the RED RACER name and logo. (#37 ¶ 4) According to the defendant, the RED RACER name and image was conceptualized from a painting in a restaurant frequented by Central City's founder and president.

The evidence (and the reasonable inferences to be drawn therefrom) proffered by the parties on the question of Central City's subjective intent in adopting the RED RACER mark is in dispute.  As a consequence, this factor cannot be said to favor either Bear Republic or Central City, and so is viewed as neutral.

6. *The Strength of Bear Republic's Marks*

"Strong and distinctive trademarks, such as fanciful words (e.g., 'Clorox') and words used in arbitrary ways (e.g., 'Apple Computers'), receive greater protection than weak, generic marks (e.g., 'bleach')." *Flynn v. AK Peters, Ltd.,* 377 F.3d 13, 19 (1 Cir., 2004); *Beacon Mut. Ins. Co.,* 376 F.3d at 19; *Pignons,* 657 F.2d at 492 ("'Strong' marks are accorded broader protection against

infringement than are 'weak' marks.") (citations omitted); *Riverbank,* 625 F. Supp.2d at 75 ("Strong marks enjoy the greatest protection against infringement.") (citations omitted).  There are several considerations that are pertinent when evaluating the strength of a plaintiff's mark: "the length of time a mark has been used and the plaintiff's renown in its field; the strength of the mark in the plaintiff's field of business, especially by looking at the number of similar registered marks; and the plaintiff's actions in promoting its mark." *Boston Athletic Ass'n v. Sullivan,* 867 F.2d 22, 32 (1 Cir., 1989) (internal citations omitted); *Beacon Mut. Ins. Co.,* 376 F.3d at 19.

In Bear Republic's view, RACER 5 and RED ROCKET are strong marks because they are arbitrary, "primarily consist[ing] of the words 'racer' and 'rocket' which do not describe any characteristic of beer..." and they have a "long-standing and extensive use in commerce." (#25 at 9)  Central City disagrees, claiming that the plaintiff's marks are not strong because within the beer market there is extensive third-party use of marks with the same or similar components. (#29 at 6)

Turning to a review of the relevant factors, Bear Republic has been using RACER 5 since in or about 1996 (#24 ¶ 6) and RED ROCKET since the early

36

1990s (#24 ¶ 18).  The plaintiff has enjoyed substantial success with both the RACER 5 and RED ROCKET beers.  From 1997 to 2009, RACER 5 has won twenty-six beer awards/medals at the Great American Beer Festival as well as other beer festivals and fairs. (#24 ¶ 11)  RED ROCKET, too, has won awards and medals at beer festivals, twenty-one since 1997. (#24 ¶ 13)  According to Bear Republic, its Brewery of the Year award and Richard G. Norgrove's Brewmaster of the Year award at the 2006 Great American Beer Festival were "primarily due to the success of" RACER 5 and RED ROCKET beers.[21] (#24 ¶ 10)

RACER 5 and RED ROCKET are the plaintiff's top two selling beers, respectively. (#22 ¶ 3)  Over the past twelve years, Bear Republic has sold approximately 12.8 million bottles of RACER 5 and 2.25 million bottles of RED ROCKET. (#22 ¶ 3)  Based on sales volume of beer, the Brewers Association ranked Bear Republic in the top five percent of U.S. craft breweries for 2008. (#22 ¶ 4[22])  In terms of promotion, Bear Republic "has sponsored several

---

[21]

Central City, too, has been the recipient of awards for its beers. (#37 ¶ 11)  It has not been alleged that this is a case where an attempt is being made to sell a clearly inferior product by means of a deceptively similar name or mark.

[22]

Lest the wrong impression be given by these facts and figures, the defendant notes that "in 2009, the craft brewing overall share of the beer market was 4.3% by volume" and that the Brewers Association did not name Bear Republic "as one of the fifty largest craft brewers" in 2008. (#38 ¶ 8)

bicycling teams, as well as race car drivers and racing teams." (#24 ¶ 23)  In addition the company has marketed and advertised its product in trade journals, and has received publicity in various bicycling publications. (#24 ¶¶ 17-22 and Exhs. L-P)  Bear Republic has also received "industry-wide and public praise and acclaim in the media" for its beers, including in print and online publications such as *The Boston Globe*, *Los Angeles Times*, *Men's Journal*, *Wall Street Journal Online* and *USA Today*." (#24 ¶¶ 14-16 and Exh. A-K)

Central City argues that the name RED ROCKET is not unique for a beer, and has provided evidence of other beer with identical or substantially similar names, i.e., "RED ROCKET Pale Ale" at Bristol Brewing Company, a brewpub in Colorado Springs, Colorado, "RED ROCKET Amber Ale" from Third Base Sports Bar & Brewery and "ROCKET RED red ale" from Big River Grille & Brewing Works. (#38 ¶¶ 9-12)[23]  Further, numerous other beers feature RED in their name. (#38 ¶¶ 13-18)  In addition, Central City contends that there are also "a number of beer manufacturers [that] use the word RACE in connection with beer." (#29 at 8)  As examples, the defendant cites the mark WILD RACE used in connection with beer and ale from 1999 to at least 2007 (#38 ¶ 21), RACE

---

[23]

    In the plaintiff's view, because of their limited distribution, these beers does not implicate the strength of the RED ROCKET mark. (#44 at 3)

CASE for beer packaging by Molson (#38 ¶ 22), and MICHELOB ULTRA's slogan "RACE TO THE ULTRA." (#38 ¶ 19)[24]

The Court concludes that the "strength" factors militate in favor of a finding that the RACER 5 is a strong mark deserving of broad protection, and the RED ROCKET is a weak mark deserving of only limited protection.  RACER 5 has a high volume of sales, broad media exposure through publicity and awards, and little competition from other registered marks in the field.  RED ROCKET, on the other hand, has a much lower volume of sales, less publicity, and several other competing marks in the field.  Accordingly, the strength of the mark factor favors Bear Republic on its RACER 5 mark and Central City with respect to RED ROCKET.

## 7. Conclusion

After carefully weighing the relevant factors, the Court concludes that Bear Republic has failed to show a likelihood of success in establishing that Central City's RED RACER mark infringes the RACER 5 or RED ROCKET marks. At best, Bear Republic has presented evidence that would permit a finding of a similarity of goods, trade and advertising channels, prospective customers, as

---

[24]

In its reply brief, Bear Republic discredits the suggestion that others have used RACER on a beer bottle or can in the United State. (#44 at 1-2)

well as a finding that RACER 5 is a strong mark.  The remaining factors, in particular the similarity of the marks analysis, persuade the Court that Bear Republic would not be likely to succeed on the merits of the claim. Consideration of the marks in their entirety and the way in which a typical consumer would encounter the products in the marketplace does not support a finding of likelihood of confusion.

## B. Irreparable Harm

Bear Republic contends it will suffer irreparable harm if an injunction does not issue because it will lose control over its reputation and goodwill.  The First Circuit has explained that "'[i]rreparable injury' in the preliminary injunction context means an injury that cannot adequately be compensated for either by a later-issued permanent injunction, after a full adjudication on the merits, or by a later-issued damages remedy." *Rio Grande Community Health Center, Inc. v. Rullan*, 397 F.3d 56, 76 (1 Cir., 2005)(citations omitted); *Ross-Simons of Warwick*, 217 F.3d at 13 ("It is settled beyond peradventure that irreparable harm can consist of 'a substantial injury that is not accurately measurable or adequately compensable by money damages.'") (quotation and citation omitted).

Here, in the case of RED ROCKET, the plaintiff has not shown similarity of marks, actual confusion, subjective intent, or strength of marks.  As for RACER 5, Bear Republic has failed to establish that the marks are confusingly similar, a factor which is of utmost importance in a likelihood of confusion analysis.  A finding of irreparable harm is not warranted because Bear Republic has not demonstrated a likelihood that it will suffer a loss of reputation, sales, or goodwill due to the sale of RED RACER.

## C. Balance of Hardships

The plaintiff contends that the balance of the hardships clearly favors Bear Republic because actual confusion has already occurred, and it has lost control over the reputation and goodwill symbolized by its long-standing marks. Having concluded that actual confusion has not occurred to the extent it is relevant in a likelihood of confusion analysis, the sale of RED RACER has not been shown to threaten Bear Republic's reputation and goodwill.  If a preliminary injunction were to issue, Central City would be precluded from marketing its product in the United States, resulting in significant actual economic harm.  The balance of hardships tilt in the defendant's favor.

## D. Public Interest

The public interest is best served by fair competition in the marketplace.

41

Since Bear Republic has not shown a likelihood of succeeding on the merits in establishing its infringement claims, to enjoin Central City from selling RED RACER in the United States would not serve the public interest.

### V.  Order

For all the reasons stated, it is ORDERED that the plaintiff's Motion For Preliminary Injunction (#18) be, and it hereby is, DENIED.


/s/ Robert B. Collings

ROBERT B. COLLINGS
United States Magistrate Judge

June 7, 2010.

APPENDIX A





**Bear Republic's
RACER 5 India Pale Ale**

**Bear Republic's
RED ROCKET ALE**



**Central City's
RED RACER India Pale Ale**



**Central City's
RED RACER Lager**



**Central City's
RED RACER Pale Ale**